UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Pan-American Life Insurance Company, Vista Life & Casualty Reinsurance Company, and Vista PC 3.19 IC, Inc., <br>  Plaintiffs, <br> v. <br> Antarctica Capital Management, LLC <br> Antarctica Vista Legacy Investment, LLC, <br> and DLA Piper, LLP. <br>  Defendants. | Case No. 1:20-cv-09236 (ALC) <br><br> *Oral Argument Requested* |

### ANTARCTICA DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

**GLENN AGRE BERGMAN & FUENTES LLP**
Jed I. Bergman (jbergman@glennagre.com)
Tian "Skye" Gao (sgao@glennagre.com)
55 Hudson Yards
New York, New York 10001
Tel: (212) 358-5600

*Attorneys for Defendants Antarctica Capital Management, LLC and Antarctica Vista Legacy Investment, LLC*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................. 2

    I.    PLAINTIFFS FAIL TO PLEAD ENFORCEMENT OF THE NOTE ............................. 2

    II.   PLAINTIFFS FAIL TO PLEAD PERFORMANCE OF THE SHAREHOLDER
         AGREEMENT. ................................................................................................ 6

    III.  PLAINTIFFS FAIL TO PLEAD FRAUD OR FRAUDULENT CONCEALMENT...... 7

    IV.  PLAINTIFFS FAIL TO PLEAD NEGLIGENT MISREPRESENTATION. .................. 9

    V.   PLAINTIFFS FAIL TO PLEAD FRAUDULENT TRANSFER. .................................... 9

    VI.  THE ENTIRE SAC SHOULD BE DISMISSED WITH PREJUDICE. ......................... 10

CONCLUSION ........................................................................................................................ 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amusement Indus., Inc. v. Stern*,
   786 F. Supp. 2d 758 (S.D.N.Y. 2011) .................................................................................... 9

*AT & T Corp. v. Syniverse Techs., Inc.*,
   2014 WL 4412392 (S.D.N.Y. Sept. 8, 2014) ........................................................................... 7

*Berman v. Sugo LLC*,
   580 F. Supp. 2d 191 (S.D.N.Y. 2008) .................................................................................... 4

*Campo v. Sears Holdings Corp.*,
   371 Fed. Appx. 212 (2d Cir. 2010) ...................................................................................... 10

*Cole v. Blackwell Fuller Music Publ'g, LLC*,
   2018 WL 4680989 (S.D.N.Y. Sept. 28, 2018) ........................................................................ 7

*Commander Oil Corp. v. Advance Food Serv. Equip.*,
   991 F.2d 49 (2d Cir. 1993) ..................................................................................................... 5

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991) ..................................................................................................... 4

*Derry Fin. N.V. v. Christiana Companies, Inc.*,
   797 F.2d 1210 (3d Cir. 1986) ................................................................................................. 6

*Donerail Corp. N.V. v. 405 Park LLC*,
   30 Misc. 3d 1221(A) (Sup. Ct., N.Y. Cnty. Feb. 2, 2011) ...................................................... 5

*Elite Promotional Mktg., Inc. v. Stumacher*,
   8 A.D.3d 525 (2d Dep't 2004) ............................................................................................... 4

*Foxley v. Sotheby's Inc.*,
   893 F. Supp. 1224 (S.D.N.Y. 1995) ....................................................................................... 8

*Graham v. Barriger*,
   699 F. Supp. 2d 612 (S.D.N.Y. 2009) .................................................................................... 5

*Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*,
   58 F. Supp. 2d 228 (S.D.N.Y. 1999) ...................................................................................... 8

*Houlihan/ Lawrence, Inc. v. Duval*,
   228 A.D.2d 560 (2d Dep't 1996) ............................................................................................ 9

*Hua Xue v. Jensen*,
   2020 WL 6825676 (S.D.N.Y. Nov. 19, 2020) ....................................................................... 8

*In re Andrew Velez Const., Inc.*,
  373 B.R. 262 (Bankr. S.D.N.Y. 2007) .................................................................................. 10

*Island Def Jam Music Grp.*,
  412 F.3d 82 (2d Cir. 2005) ..................................................................................................... 4

*Jasper & Black, LLC v. Carolina Pad Co., LLC*,
  2012 WL 413869 (S.D.N.Y. Feb. 9, 2012) ............................................................................ 3

*Johnson v. Wolan*,
  2010 WL 5076821 (S.D.N.Y. Dec. 13, 2010) ...................................................................... 10

*L. Debenture Tr. Co. of New York v. Maverick Tube Corp.*,
  595 F.3d 458 (2d Cir. 2010) ................................................................................................... 5

*Low v. Robb*,
  2012 WL 173472 (S.D.N.Y. Jan. 20, 2012) ........................................................................... 8

*Mallet v. Miller*,
  442 F. Supp. 2d 156 (S.D.N.Y. 2006) .................................................................................... 7

*Manning v. Utilities Mut. Ins. Co.*,
  254 F.3d 387 (2d Cir. 2001) ................................................................................................... 8

*Nnaka v. Fed. Republic of Nigeria*,
  2019 WL 6831532 (S.D.N.Y. Aug. 12, 2019), *report and recommendation
  adopted as modified*, 2019 WL 4564927 (S.D.N.Y. Sept. 19, 2019), *aff'd*,
  2020 WL 6839179 (2d Cir. Aug. 5, 2020) .............................................................................. 7

*Optionality Consulting Pte. Ltd. v. Nekos*,
  2019 WL 4523469 (S.D.N.Y. Sept. 18, 2019) (Carter, J.) ..................................................... 4

*PPI Enterprises (U.S.), Inc. v. Del Monte Foods Co.*,
  2003 WL 22118977 (S.D.N.Y. Sept. 11, 2003) ..................................................................... 9

*Ray v. Ray*,
  799 F. App'x 29 (2d Cir. 2020) ............................................................................................ 10

*Sira v. Morton*,
  380 F.3d 57 (2d Cir. 2004) ..................................................................................................... 4

*Sony Fin. Servs., LLC v. Multi Video Grp., Ltd.*,
  2003 WL 21396690 (S.D.N.Y. June 17, 2003) ...................................................................... 3

*This Is Me, Inc. v. Taylor*,
  157 F.3d 139 (2d Cir. 1998) ................................................................................................... 4

*Vibes Int'l Inc., SAL v. Iconix Brand Grp., Inc.*,
   2020 WL 3051768 (S.D.N.Y. June 8, 2020) .......................................................................... 3, 9

*Wilson v. Kellogg Co.*,
   111 F. Supp. 3d 306 (E.D.N.Y. 2015), *aff'd*,
   628 F. App'x 59 (2d Cir. 2016) ................................................................................................ 4

**Rules**

CPLR § 3213 ................................................................................................................................... 3

CPLR § 213(2) ................................................................................................................................ 5

Fed. R. Civ. P. 9(b) ..................................................................................................................... 1, 8

The Antarctica Defendants respectfully submit this reply memorandum of law in further support of their motion to dismiss the Second Amended Complaint.[1]

## PRELIMINARY STATEMENT

Rather than salvaging the SAC, Plaintiffs' opposition further confirms that their fundamentally flawed claims are subject to dismissal with prejudice.

Count I, to "enforce" the Note, is foreclosed by Plaintiffs' admitted breaches of the interrelated IMA. Plaintiffs' unsupported contention that there are disputed issues of fact is conclusively refuted by their own pleading: the SAC concedes Vista's breach of the IMA, and Plaintiffs neither identify any countervailing allegations nor deny that the breach was material. In any event, as an alternative basis for dismissal, the express language of the Note defeats Plaintiffs' attempt to accelerate the Note's full principal and interest.

Plaintiffs offer no defense on the merits of Count II, for "performance" of the Shareholder Agreement. Instead, they posit belatedly that this claim should simply be severed and transferred to the District of Vermont. In light of Plaintiffs' undisputed failure to state this claim, any such relief should be denied as uneconomical, unwarranted, and unjust.

Plaintiffs likewise rebut none of the grounds for dismissing their unworkable claims for fraud and fraudulent concealment (Count V) and negligent misrepresentation (Count VI). The opposition only underscores that both claims fail on their face because, among other reasons, they sound in contract and Plaintiffs fail to allege the most rudimentary components of either claim under any pleading standard, let alone with Rule 9(b)'s required particularity.

---

[1] "Mov. Br." means the Antarctica Defendants' March 25, 2021 memorandum of law in support of their motion to dismiss. Dkt. No. 39. "Opp." means Plaintiffs' April 26, 2021 memorandum of law in opposition to the motion. Dkt. No. 41. Undefined capitalized terms have the same meanings as in the Mov. Br. All citations, internal quotation marks, and internal brackets are omitted unless otherwise noted.

Finally, Plaintiffs' incoherent claim for fraudulent transfer under the UVTA and/or DCL (Count VII) is riddled with flaws and negated by their own allegations.

Despite three opportunities, Plaintiffs have failed to assert even a single viable cause of action. This Court should dismiss the Second Amended Complaint with prejudice.

## ARGUMENT

### I.   PLAINTIFFS FAIL TO STATE A CLAIM FOR ENFORCEMENT OF THE NOTE.

Plaintiffs' opposition fails to refute Antarctica's showing that the Note cannot be "enforced" because (1) Antarctica's obligations were excused by Plaintiffs' prior material breach of the IMA; and, regardless, (2) there was no "Event of Default" or acceleration under the Note.

*First*, there is no credible dispute that Plaintiffs materially breached the interrelated IMA. Mov. Br. at 8-10. Plaintiffs complain that dismissal at the pleading stage would be "preposterous" and "procedurally absurd" due to the supposed existence of factual disputes. Opp. at 3-4. Yet their own pleading concedes Vista's nonperformance of the IMA. Mov. Br at 6, 9; *see* SAC ¶¶ 40-42, 44-46. And Plaintiffs' opposition cites no allegation showing a purported "factual dispute," but actually *admits* that AIA was denied its right to "take cash out of the trust account without putting up assets in replacement" (Opp. at 10-11 n.2) – a direct violation of the IMA provisions authorizing AIA to do exactly that. Mov. Br. at 5, 9; Ex. 1, §§ 1, 2(a), 3, 5(b). Nor do Plaintiffs dispute that restricting Antarctica's discretion freely to invest Trust assets was a material breach of the AIA because it struck at the "root" of the parties' financing transaction. Mov. Br. at 8-9. In view of such admissions, dismissal is required. *Id.*

Plaintiffs repeat the false refrain that the "Investment Guidelines" properly limited AIA's authority to invest. Opp. at 10-11 n.2. But the Guidelines prescribed the *types* of permissible investments; they did not require AIA's investments to be pre-approved. Ex. 1 at

2

Exhibit A.[2]  Rather, as Antarctica showed – and the SAC concedes (¶ 39) – the IMA "authorized" AIA to make investment decisions as to Trust assets on a "discretionary basis," "when it deems appropriate and without consultation with or approval of Client."  Mov. Br. at 5, 6 n.3, 9; Ex. 1, §§ 1, 2(a), 5(b).  Plaintiffs' failure to afford AIA that authority and discretion breached the IMA.  Mov. Br. at 9.[3]

Plaintiffs concede – as they must – that the material breach of an interrelated agreement "undoes the obligations of the other."  Opp. at 7.  Plaintiffs seek to distinguish Antarctica's caselaw as involving "jurisprudence related to [CPLR] § 3213" (Opp. at 4-5), but this fundamental principle has nothing to do with "unique procedural devices" in New York state courts (Opp. at 5), and it is embraced with equal force by this Court.  *See, e.g.*, *Vibes Int'l Inc., SAL v. Iconix Brand Grp., Inc.*, 2020 WL 3051768, at *4 (S.D.N.Y. June 8, 2020) (dismissing contract claim at pleading stage for failure to allege substantial performance); *accord Jasper & Black, LLC v. Carolina Pad Co., LLC*, 2012 WL 413869, at *9 (S.D.N.Y. Feb. 9, 2012); *Sony Fin. Servs., LLC v. Multi Video Grp., Ltd.*, 2003 WL 21396690, at *2 (S.D.N.Y. June 17, 2003); Mov. Br. at 8 (collecting cases).

Just as untenable are Plaintiffs' attempts to remove the IMA from the equation (Opp. at 6-9), even though that agreement is both incorporated by reference and integral to the claims in the SAC.  Plaintiffs cannot seriously dispute that the SAC incorporates the IMA by making a

---

[2]  The opposition's statement (at 8 n.1) that "the Investment Guidelines are not a part of the IMA" is flat-out wrong.  *See* Ex. 1 at Exhibit A ("Investment Restrictions – Investment Guidelines").  These are the same guidelines that were attached to the Reinsurance Agreement, further demonstrating the interrelatedness of the overall transaction.  *Compare id.*, *with* Ex. A at Schedule 3 ("Investment Guidelines").

[3]  Plaintiffs also make the unsubstantiated claim that the Financing Transaction fell through "[m]onths after" Antarctica assumed control over the trust assets.  Opp. at 6.  This too is belied by the SAC (¶ 40), which alleges that the Financing Transaction, entered on September 30, 2019 (*id.* ¶¶ 28-30), began disintegrating in "early" October 2019.

3

definitive reference to the agreement and otherwise discussing it in substance. Mov. Br. at 5 n.2; SAC ¶¶ 39,[4] 40, 42-43, 45, 58; *Optionality Consulting Pte. Ltd. v. Nekos*, 2019 WL 4523469, at *6 (S.D.N.Y. Sept. 18, 2019) (Carter, J.) (complaint incorporates draft agreement it "directly and unambiguously references"). Moreover, the IMA is "integral" to the claims in the SAC, because it undermines Plaintiffs' "ability to pursue" Counts I and II. *Wilson v. Kellogg Co.*, 111 F. Supp. 3d 306, 312 (E.D.N.Y. 2015), *aff'd*, 628 F. App'x 59 (2d Cir. 2016); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004). Plaintiffs' calculated "decision not to present a document fundamental to the viability of [their] claims should not shield the Court from considering this document." *Optionality Consulting*, 2019 WL 4523469, at *6; *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991); *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 200-01 (S.D.N.Y. 2008).

Plaintiffs also argue that the IMA and Note involve different parties and subject-matters. Opp. at 7-8. But courts do not require literal identity of parties to find that contracts are interrelated. It suffices if the parties were, "for all practical purposes, the same." *Elite Promotional Mktg., Inc. v. Stumacher*, 8 A.D.3d 525, 527 (2d Dep't 2004); *see also TVT Recs. v. Island Def Jam Music Grp.*, 412 F.3d 82, 89-90 (2d Cir. 2005) (contracts integrated even when they "involved different parties"). Here, the parties to the Note were Vista PC and Antarctica Legacy (Ex. E at 1); the parties to the IMA were Vista PC and Antarctica Legacy's affiliate, AIA (Ex. 1 at 1). And the same principals signed both documents. Ex. E at 4; Ex. 1 at 11.

Nor is there a dispute that the Note and IMA "relate to a single transaction." *This Is Me, Inc. v. Taylor*, 157 F.3d 139, 145 (2d Cir. 1998). Plaintiffs acknowledge that the investment

---

[4] "In partial consideration of its investment in VISTA PC through the Shareholder Agreement, Vista PC and VISTA RE granted to Antarctica Investment Advisers [*sic*], LLC, an affiliate of ANTARCTICA LEGACY, the authority to manage the investments in the Reinsurance Trust." *Id.* It was *through the IMA* (Ex. 1) that Plaintiffs granted AIA that authority.

4

authority granted to AIA in the IMA was "consideration" for Antarctica's investment under the Note.  SAC ¶ 39; *Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 53 (2d Cir. 1993) (contracts integrated because "[e]ach depended on the other; neither stood alone").  It is immaterial that AIA has not sued for a breach of the IMA (Opp. at 10-11 n.2), particularly as the six-year limitations period for the claim (CPLR § 213(2)) has not elapsed.  For purposes of this motion, it is enough to establish – as Antarctica has – that Plaintiffs' admitted and material breach of the interrelated IMA excused its own performance under the Note.

*Second*, and independently, Plaintiffs fail to establish that Antarctica's non-payment of interest was an "Event of Default" or triggered acceleration.  Plaintiffs concede that the Note "does not define" the term "Event of Default" (Opp. at 13), but instead attempt to incorporate the definition of "Event of Default" from the Collateral Loan Agreement ("CLA") (*id.* at 12).  Nothing in the Note provides for such incorporation by reference.  Indeed, a different, unrelated provision of the Note explicitly provides that "each capitalized term *in this sentence* not otherwise defined herein[] is used as defined in the Collateral Loan Agreement" (Ex. E, § 2(a)) – thus negating any inference that the parties incorporated other definitions *sub silentio*.  *L. Debenture Tr. Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 467, 469 (2d Cir. 2010) (contract clauses must be "read in the context of the entire agreement"); *see also Graham v. Barriger*, 699 F. Supp. 2d 612, 627 (S.D.N.Y. 2009) (plaintiff "does not identify which of the [] agreement's defined events of default [] apply to the promissory notes").[5]

Plaintiffs next contend that the plain meaning of the term "default" means a failure to perform.  Opp. at 13 (citing *Donerail Corp. N.V. v. 405 Park LLC*, 30 Misc. 3d 1221(A) (Sup.

---

[5]  In any event, the CLA's definition is circular and unavailing:  it defines "Event of Default" as "an event of default under any Funding Commitment Document" (Ex. F, § 1.1), but nothing in the Note provides that a missed interest payment is an event of default.

5

Ct., N.Y. Cnty. Feb. 2, 2011)). True, but irrelevant. Not every failure to perform is an "Event of Default." *See Derry Fin. N.V. v. Christiana Companies, Inc.*, 797 F.2d 1210, 1214 (3d Cir. 1986) (under New York rules of contract interpretation, lower case term "default" had different meaning than "Event of Default," which "is clearly a term of art"). And nowhere does the Note define an "Event of Default" to include an alleged nonpayment of interest. Dismissal is thus required. Mov. Br. at 10-11.

Plaintiffs also admit that the Note contains no acceleration clause, but purport that it "does provide for the accelerated maturity of all sums due under the [] Note upon an event of default." Opp. at 12. This argument is contradicted by the plain language of the Note, which simply says that "all amounts due hereunder" – *i.e.*, *presently* due – may be collected if an "Event of Default" continues. Ex. E, § 10. Nowhere does the Note says that the entire principal and interest that "*will become* due" under the Note may be collected immediately. And as shown, courts will not imply an acceleration clause where none exists. Mov. Br. at 11.

In any case, even the notion that unpaid interest constitutes an amount "past due" founders under the Note's plain terms. The Note's "Maturity" clause states that "the Principal Amount *and any accrued and unpaid Interest* shall be paid by [Antarctica]" by September 23, 2021, unless Antarctica opts to repay sooner. Ex. E, § 2(b) (emphasis added). The Note thus recognizes that interest payments "accrue" per quarter, but do not "mature" until September 2021. Thus, the interest payment that Plaintiffs presume is past due is not yet due at all. For all these reasons, Count I must be dismissed.

## II. PLAINTIFFS FAIL TO STATE A CLAIM FOR PERFORMANCE OF THE SHAREHOLDER AGREEMENT.

Plaintiffs offer no response to Antarctica's showings that (a) no term in the Shareholder Agreement was breached, and that in any event (b) Vista's breach of the IMA excused

Antarctica's performance. Mov. Br. at 12-14. Because Plaintiffs' "silence concedes the point[s]," dismissal is required. *AT & T Corp. v. Syniverse Techs., Inc.*, 2014 WL 4412392, at *7 (S.D.N.Y. Sept. 8, 2014); *Cole v. Blackwell Fuller Music Publ'g, LLC*, 2018 WL 4680989, at *7 (S.D.N.Y. Sept. 28, 2018) ("[n]umerous courts" hold that "a plaintiff's failure to address an issue in its opposition raised by its adversary amounts to a concession or waiver of the argument").

Plaintiffs' sole rebuttal against dismissal is that the claim should be transferred to the District of Vermont, which they now concede is the proper forum, or dismissed with leave to refile. Opp. at 14-16. Plaintiffs' belated bid for a do-over in another district (after two amendments) – another pleading, another motion, another round of briefing, and so forth – is the very antithesis of judicial economy, because the claim undisputedly fails on the merits. *See Nnaka v. Fed. Republic of Nigeria*, 2019 WL 6831532, at *8, *12 (S.D.N.Y. Aug. 12, 2019) (dismissing with prejudice), *report and recommendation adopted as modified*, 2019 WL 4564927 (S.D.N.Y. Sept. 19, 2019), *aff'd*, 2020 WL 6839179 (2d Cir. Aug. 5, 2020); *see also Mallet v. Miller*, 442 F. Supp. 2d 156, 158 (S.D.N.Y. 2006) (dismissing rather than transferring "in the interest of judicial economy," where pleading "so clearly does not survive dismissal").[6]

### III. PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUD OR FRAUDULENT CONCEALMENT.

Nothing in Plaintiffs' opposition refutes the independent legal grounds for dismissing the fraud or fraudulent concealment claim (Count V). Notably, Plaintiffs do not even address their failure to plead causation, which alone defeats the claim. Mov. Br. at 18-19.

Moreover, Plaintiffs actually concede that the fraud claim is duplicative of a breach of contract claim, by asserting that the claim arises from an "illusory promise" and "secret

---

[6] None of Plaintiffs' cases (Opp. at 14-16) involved a claim that was subject to dismissal on legal grounds unchallenged by the plaintiff, as this one does.

7

intention" not to perform the Collateral Loan Agreement by "concealing" the Escrow Agreement. Opp. at 16-19. But an undisclosed intention not to perform under a contract is the classic example of a duplicative fraud claim. Mov. Br. at 19; *Manning v. Utilities Mut. Ins. Co.*, 254 F.3d 387, 401 (2d Cir. 2001). Likewise, Plaintiffs' theory that Antarctica "intentionally misrepresented" the scope of DLA's obligations (Opp. at 18) simply relies on what the contract says and, once again, fails to support an independent fraud claim. Mov. Br. at 19-20; *Low v. Robb*, 2012 WL 173472, at *7 (S.D.N.Y. Jan. 20, 2012) ("alleged 'misrepresentations' were not collateral or extraneous to the contract [] – they *were* the contract") (emphasis in original). Nor do Plaintiffs deny their failure to plead distinct fraud damages. Mov. Br. at 20.

Plaintiffs also cannot clear Rule 9(b)'s heightened bar for pleading the elements of fraud, including a misrepresentation or omission. *Id.* at 15. Tellingly, Plaintiffs do not try to defend their fraud allegations as particularized. Rather, they rely on bare assertions (*e.g.*, Opp. at 17-18) that "merely recite the elements" of fraud. *Hua Xue v. Jensen*, 2020 WL 6825676, at *9-10 (S.D.N.Y. Nov. 19, 2020) (dismissing fraud claim based on "conclusory statements").

Nor do Plaintiffs dispute their failure to plead a duty to disclose or reasonable reliance in view of their own lack of diligence. Mov. Br. at 17-18. Plaintiffs never deny that, despite having agreed to the appointment of DLA as escrow agent, they neither proposed nor asked to review an escrow agreement. Plaintiffs' own carelessness and ineptitude foreclose their fraud claim. *Id.*; *see Foxley v. Sotheby's Inc.*, 893 F. Supp. 1224, 1229 (S.D.N.Y. 1995) ("failure to receive the [] letter does not establish fraud because it is an alleged omission of fact to which [plaintiff] had access"); *Granite Partners, L.P. v. Bear, Stearns & Co. Inc.*, 58 F. Supp. 2d 228, 261 (S.D.N.Y. 1999).

8

### IV. PLAINTIFFS FAIL TO STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION.

Having failed to state a fraud claim, Plaintiffs fail to state a negligent misrepresentation claim based on identical allegations. Mov. Br. at 20-21. Plaintiffs do not challenge this point.

Plaintiffs also do not deny that their negligent misrepresentation claim is duplicative of a breach of contract claim. *Id.* at 21; *PPI Enterprises (U.S.), Inc. v. Del Monte Foods Co.*, 2003 WL 22118977, at *28 (S.D.N.Y. Sept. 11, 2003).

Nor do Plaintiffs refute the lack of a special relationship. Plaintiffs reference the three instances in which a special relationship could arise, but neglect to address how their allegations fit any of these narrow exceptions. Opp. at 20-21. Instead, Plaintiffs rehash their conclusory and unworkable allegations of fraud, which fail to state a negligent misrepresentation claim under any pleading standard, let alone with particularity. Mov. Br. at 21. Lastly, while the existence of a special relationship could entail a "factual inquiry" (Opp. at 21), courts do not hesitate to dismiss pleadings with threadbare allegations such as these. *See Amusement Indus., Inc. v. Stern*, 786 F. Supp. 2d 758, 778 (S.D.N.Y. 2011) (dismissing negligent misrepresentation claim because special relationship allegations insufficient); *Vibes*, 2020 WL 3051768, at *10 (same).[7]

### V. PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUDULENT TRANSFER.

Not once do Plaintiffs dispute that the fraudulent transfer claim sounds in contract and is thus nonactionable. Mov. Br. at 24. That concession alone warrants dismissal.

Moreover, Plaintiffs cannot hedge their bets so as to bring their claim within the UVTA. The SAC's unequivocal allegation is that the purported transfer took place on November 30, 2019 (SAC ¶ 47), before the UVTA took effect on April 4, 2020 (Mov. at 22). That a

---

[7] Plaintiffs' inapposite caselaw does not change the analysis. *See, e.g.*, *Houlihan/ Lawrence, Inc. v. Duval*, 228 A.D.2d 560, 562 (2d Dep't 1996) (finding special relationship between real estate broker and buyer with whom broker had "personal, direct dealings").

hypothetical future injunction would address a hypothetical future transfer (Opp. at 22) does not somehow bring the claim under the UVTA. The operative date is when the "right of action [] accrued." *Ray v. Ray*, 799 F. App'x 29, 31 n.1 (2d Cir. 2020).

Plaintiffs' fallback effort to squeeze their allegations into the narrow confines of the DCL also fails. Plaintiffs do not contest losing any claim to the Collateral, and thus their standing as "creditors" of Antarctica, when the Financing Transaction was terminated. Mov. Br. at 22.

Nor do Plaintiffs rebut their failure to plead constructive or actual fraud under the DCL. As to constructive fraud, Plaintiffs claim that Antarctica Legacy's supposed insolvency "is borne out by the allegations of the SAC." Opp. at 22. The SAC says no such thing. Nor could *this action* possibly qualify as an action for money damages that was pending at the time of transfer. Opp. at 23 n.6. As to actual fraud, Plaintiffs are unable to point to any precise allegations of intent in the SAC. They instead parrot the legal elements of direct and circumstantial knowledge (*id.* at 23-24), which fall far short of stating fraudulent transfer with particularity. Mov. Br. at 23-24; *In re Andrew Velez Const., Inc.*, 373 B.R. 262, 277 (Bankr. S.D.N.Y. 2007).

The opposition (at 22 n.5) also insists that DLA was not the transferor of the Collateral (SAC ¶ 101) – further highlighting the SAC's incoherence as to the supposed transfer. *Compare, e.g., id.* ¶ 47 (alleging that Collateral was returned to ACM), *with* ¶¶ 60, 64 (alleging that Collateral was returned to Antarctica Legacy). Plaintiffs' facially deficient allegations require dismissal. *See Johnson v. Wolan*, 2010 WL 5076821, at *5 (S.D.N.Y. Dec. 13, 2010).

## VI.  THE ENTIRE SAC SHOULD BE DISMISSED WITH PREJUDICE.

Finally, Plaintiffs offer no explanation of what they would allege differently in an amended complaint, let alone how a fourth attempt to plead a viable cause of action would fare any better than the SAC. Mov. Br. at 24; *Campo v. Sears Holdings Corp.*, 371 Fed. Appx. 212, 218 (2d Cir. 2010). Dismissal should be with prejudice.

## CONCLUSION

For the foregoing reasons, and those stated in their moving brief, the Antarctica Defendants respectfully request that the Court grant their motion to dismiss with prejudice.

Dated: New York, New York
May 17, 2021

Respectfully submitted,

**GLENN AGRE BERGMAN & FUENTES LLP**

By: _____/s/ Jed I. Bergman_____
Jed I. Bergman (jbergman@glennagre.com)
Tian "Skye" Gao (sgao@glennagre.com)
55 Hudson Yards
New York, New York 10001
Tel: (212) 358-5600

*Attorneys for Defendants Antarctica Capital Management, LLC and Antarctica Vista Legacy Investment, LLC*