**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: ___3/31/2022___

------------------------------------------------------------------ x

Pan-American Life Ins. Co., Vista Life &          :
Casualty Reinsurance Co., & Vista PC3.19          :
IC, Inc.,                                          :
                                                   :        **1:20-CV-9236-ALC**
                                   Plaintiffs,      :
                                                   :        <u>**Opinion and Order**</u>
                        -against-                   :
                                                   :
Antarctica Capital Mgmt., LLC, Antarctica Vista    :
Legacy Investment, LLC, & DLA Piper, LLP,          :
                                                   :
                                   Defendants.      x
------------------------------------------------------------------

**ANDREW L. CARTER, JR., United States District Judge:**

This is an action sitting in diversity involving a reinsurance transaction. Before the Court are Defendants' motions to dismiss the Second Amended Complaint. For the reasons stated herein, Defendants Antarctica Capital Management, LLC and Antarctica Vista Legacy Investments, LLC's (the "Antarctica Defendants") motion is **DENIED** without prejudice. Defendant DLA Piper's ("DLA") motion is **DENIED IN PART** and **GRANTED IN PART**.

## I. BACKGROUND[1]

On August 28 and 29, 2019, Plaintiffs Pan-American Life Insurance Company ("Pan-American" or "PALIC") and Vista PC 3.19 IC, Inc. ("Vista PC"), an incorporated protected cell of Vista Life & Casualty Reinsurance Company ("Vista Re"), executed a Reinsurance Agreement, in which Vista PC agreed to reinsure the liabilities of PALIC in connection with an in-force book of disability income business ("Disability Income Block"). *See* Second Amended

---

[1] The facts are taken from the Second Amended Complaint filed on February 24, 2021. *See* ECF No. 33. At the motion to dismiss stage, courts accept as true all well-pleaded allegations in the complaint and draws all reasonable inferences in plaintiff's favor. *See N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017).

Complaint ¶ 20, Ex. A (the "SAC"). The Reinsurance Agreement stipulated, among other things, that Vista Re would fund Vista PC with $6.6 million in additional capital no later than October 10, 2019. SAC ¶ 20. Failure to fulfill the term would allow PALIC "in its sole discretion" to terminate the Reinsurance Agreement. SAC, Ex. A Section 18(B)(4)). Contemporaneous with the Reinsurance Agreement, Antarctica Capital and Plaintiffs executed a Participant Agreement, under which PALIC would be a participant in Vista PC while Vista Re would manage Vista PC. SAC ¶ 22, Ex. B. On August 29 and 30, 2019, PALIC, Vista PC, and nonparty Fifth Third Bank entered into a Reinsurance Trust Agreement whereby Vista PC would establish a Reinsurance Trust Account for the benefit of PALIC, which would contain sufficient assets to cover Vista PC's reinsurance obligations under the Reinsurance Agreement. SAC ¶ 20-23, Ex. C.

According to the SAC, prior to execution of the Reinsurance Agreement and following Vista Re's efforts to solicit investment from Antarctica Capital for the Reinsurance Agreement, Antarctica Capital agreed to provide additional investment to Vista PC. SAC ¶ 12, 18-19. Plaintiffs allege that Antarctica Capital proposed a capital contribution in the amount of $6.6 million—$2 million in cash, plus a promissory note totaling $4.6 million that would be secured by collateral and held in escrow. SAC ¶ 21, 24. The collateral would comprise Antarctica Capital's ownership interests in an entity called OMNIH QOZB, LLC whose value at the time exceeded $4.6 million (the "Collateral"). SAC ¶ 24. In early September 2019, Vista Re and Antarctica Capital exchanged drafts of agreements that would formalize Antarctica Capital's potential investment in Vista PC via an affiliate, Antarctica Legacy, through a promissory note and Shareholder Agreement. SAC ¶ 25. On September 18, 2019, Antarctica Capital provided documentation related to the Collateral that would be used to secure Antarctica Legacy's obligations under the promissory note. SAC ¶ 26. On September 20, 2019, the closing date of the

Reinsurance Agreement, PALIC deposited approximately $54 million in the Reinsurance Trust Account. SAC ¶ 27.

In fulfillment of Antarctica Capital's investment in Vista PC, on September 30, 2019, Vista PC, Vista Re, and Antarctica Legacy executed a Shareholders Agreement, which set forth that Antarctica Legacy would purchase shares in Vista PC in exchange for a $6.6 million capital contribution to Vista PC. SAC ¶ 28, Ex. D. Vista PC sought the capital contribution to fulfill its reinsurance obligations under the Reinsurance Agreement. SAC ¶ 28. Article 10.3 of the Shareholders Agreement states that the agreement shall be governed by the laws of the State of Vermont and that any claims or actions brought by any party thereunder related to any matter must be brought in "federal and state courts located within Chittenden County in the State of Vermont." SAC ¶ 28, Ex. D at 11.

On the same day, Antarctica Legacy contemporaneously issued a promissory note for $4.6 million to Vista PC as part of its payment for 6,000 shares of Class B stock acquired from Vista PC (the "Promissory Note"). SAC ¶ 29. Defining Antarctica Legacy as "Investor" and Vista PC as "Reinsurer" or "Beneficiary," the Note reads, in relevant part:

> Acknowledgment of Security Assignment. To secure the performance of this Promissory Note and Investor's obligations under the Collateral Loan Agreement, dated an even date herewith (the "Collateral Loan Agreement"), between the Investor and the Reinsurer, and without limiting any other rights and remedies of the Reinsurer as set forth in the Collateral Loan Agreement, the Reinsurer is a beneficiary of the Collateral Loan Agreement and Investor has among other things, irrevocably granted to the Reinsurer rights, title and interest in and to this Promissory Note and any related documentation (including financing statements), including without limitation, the right to collect all amounts due hereunder or thereunder during the continuation of an Event of Default. Investor hereby acknowledges the granting such rights and the irrevocable power of attorney granted by Investor to the Reinsurer pursuant to the Collateral Loan Agreement, to (i) perform any act, execute any documents or otherwise to take any action with respect to the advances evidence by this Promissory Note and (ii) demand, receive and enforce all of the Reinsurer's rights, powers and remedies with respect to this Promissory Note.

SAC, Ex. E at 2-3.

Antarctica Legacy and Vista PC executed a third contemporaneous agreement—the Collateral Loan Agreement ("CLA"). SAC ¶ 30; SAC, Ex. F. Under Section 2.1 of the CLA, Antarctica Legacy put up the Collateral—a portion of its ownership of OMNIH QOZB, LLC—which fair market value as of the date of the agreement was not less than $5,060,000. SAC ¶ 30. Section 2.1 reads:

> Contribution
>
> Investor hereby contributes to Beneficiary such portion (the "Initial Interests"), of its ownership of OMNIH QOZB, LLC (the "Issuer") having a fair market value as of the close of business the day before the date of this Agreement of not less than $5,060,000, (ii) any Additional Interests that may be required, and any Substitute Interests that may be permitted, under Section 3 after the date hereof, and (iii) all proceeds of the foregoing (collectively, the "Interests"). Investor shall issue or cause to be issued to Beneficiary a promissory note substantially in the form of Exhibit A hereto.

SAC, Ex. F. Under Section 2.3 of the CLA, the parties agreed to appoint Defendant DLA Piper LLP (US) ("DLA Piper") or another third party as escrow agent to hold the Collateral. SAC ¶ 31. Antarctica Legacy was required to deliver the Collateral on the date of execution of the CLA.

SAC ¶ 31. Section 2.3 reads:

> Investor and Beneficiary hereby agree to the appointment of DLA Piper LLP (US) as escrow agent to hold physical possession of the Initial Interests and any assets of the Additional Interests that are certificated securities. On the date of this Agreement, Investor shall deliver to DLA Piper LLP (US) the Initial Interests. To the extent any assets of the Interests are assets other than certificated securities, Investor and Beneficiary shall agree to appoint a third-party to hold custody of such assets. As used in this Agreement, "Escrow Agent" shall mean DLA Piper LLP (US) or such other third party appointed under this Section 2.3, as the context may require.

SAC, Ex. F. On September 30, 2019, Antarctica Legacy was required to pay the $2 million cash portion for its purchase of Vista PC shares under the Shareholders Agreement but failed to do so.

SAC ¶ 38. Vista PC and Antarctica Capital discussed a proposed arrangement that would permit PALIC to pre-approve a certain amount of assets to be distributed to an escrow agent for the Reinsurance Trust Account. SAC ¶ 44. On or about November 2019, Antarctica Capital negotiated such an arrangement with PALIC and DLA Piper. SAC ¶ 46. Vista PC requested that DLA Piper provide a letter acknowledging that they would return any funds to the Reinsurance Trust Account if such funds were not used to buy an asset for the Reinsurance Trust Account. SAC ¶ 46. According to Plaintiffs, this "proposed escrow arrangement for assets purchased by Antarctica for the Reinsurance Trust is a separate and distinct arrangement from the escrow arrangement where DLA Piper was already holding the Collateral for the Promissory Note executed by Antarctica Legacy." SAC ¶ 46.[2]

Amid discussions about the proposed new escrow agreement, Antarctica Capital separately directed DLA Piper to return the Collateral for the Promissory Note, which was returned on November 30, 2019. SAC ¶ 47. Plaintiffs allege that they did not learn about the return of the Collateral until after the termination of the Reinsurance Agreement between PALIC and Vista PC. SAC ¶ 47. Between December 4 and December 11, 2019, Antarctica Capital sent email correspondence to Vista PC representing that they continue to coordinate with DLA Piper on the proposed new escrow arrangement. SAC ¶ 48. On December 11, 2019, Antarctica Capital emailed Vista Re/Vista PC to inform them that they agreed on the process and had found an escrow agent—the law firm of Woods Oviatt Gilman—and that Antarctica Capital would send "the form of investment orders for the mortgages shortly" for approval "so that [they] [could]

---

[2] On September 30, 2019, Plaintiffs allege that DLA, Antarctica Legacy, and Omnih Qozb, LLC executed an Escrow Agreement. The SAC explicitly references the Escrow Agreement on numerous occasions and thus the SAC relies heavily on its terms and effect. For this reason, the Court considers the Escrow Agreement, proffered by DLA, incorporated by reference into the SAC. *See Int'l Audiotext Network, Inc. v. Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995).

finalize and execute and have the firm hold in escrow." SAC ¶ 49. Plaintiffs assert that

Antarctica Legacy, despite its assurances and promises, never paid the full consideration owed to

Vista PC under the Shareholders Agreement, which prevented Vista PC from meeting its funding

obligations under the Reinsurance Agreement with PALIC. SAC ¶ 52-53.

On December 23, 2019, PALIC terminated the Reinsurance Agreement due to Vista PC's

failure to perform. SAC ¶ 54. The Reinsurance Agreement stated that Vista Re would fund Vista

PC with $6.6 million in additional capital no later than October 10, 2019. On January 17, 2020,

Vista PC made a formal written demand under the Shareholders Agreement for $2 million owed

by Antarctica Legacy and under the Promissory Note for payment of overdue interest, originally

payable on December 31, 2019, in the amount of $34,783.56. SAC ¶ 55-56. The sums due

remain outstanding. SAC ¶ 57.

Plaintiffs filed the operative complaint (the "Second Amended Complaint" or "SAC") on

February 24, 2021. ECF No. 33. Before the Court are separate motions to dismiss filed by DLA

Piper and Antarctica Vista Legacy Investment, LLC and Antarctica Capital Management, LLC

(the "Antarctica Defendants") under Rule 12(b)(6). On March 25, 2021, Defendants moved to

dismiss. ECF No. 34-36, 37-39. Plaintiffs opposed both motions on April 26, 2021. ECF No. 40,

41. On May 17, 2021, Defendants filed their replies. ECF No. 42, 43. The Court deems the

motions fully briefed. Upon review of the submissions, the Court is prepared to decide the

motions on the papers. Oral argument is not needed.

## II. STANDARD OF REVIEW

### A. 12(b)(6) Motion to Dismiss

When deciding a motion to dismiss, the Court must "accept as true all factual statements

alleged in the complaint and draw all reasonable inferences in favor of the non-moving

party." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). However, the

Court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by

mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp.

v. Twombly*, 550 U.S. 544, 555 (2007)). Claims should be dismissed when a plaintiff has not

pleaded enough facts that "plausibly give rise to an entitlement for relief." *Id.* at 679. A claim is

plausible "when the plaintiff pleads factual content that allows the Court to draw the reasonable

inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550

U.S. at 556). While not akin to a "probability requirement," the plaintiff must allege sufficient

facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

(citing *Twombly*, 550 U.S. at 556). Accordingly, where a plaintiff alleges facts that are " 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and

plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

### A. Rule 9(b) Heightened Pleading Standard

Pursuant to Rule 9(b), a plaintiff who alleges a fraud claim "must state with particularity

the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). In order to comply

with Rule 9(b), the "complaint must: (1) specify the statements that the plaintiff contends were

fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4)

explain why the statements were fraudulent." *Aquino by Convergent Distrib. of Texas, LLC v.

Alexander Capital, LP*, No. 21 Civ. 1355, 2021 WL 3185533, at *12 (S.D.N.Y. July 27, 2021)

(quoting *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006)). In addition, a plaintiff

must also "allege facts that give rise to a strong inference of fraudulent intent." *Id.*

### III. ANALYSIS

### A. Claims against DLA Piper

DLA seeks dismissal of Plaintiffs' claim for breach of contractual and fiduciary duty. Because there exists no combined cause of action for breach of contractual *and* fiduciary duties, this Court will address the claims separately. DLA also moves to dismiss the claims for fraud / fraudulent concealment and negligent misrepresentation. The parties do not dispute that New York law governs the claims against DLA in this case. Accordingly, the Court will apply New York law.

### 1. Breach of Contract

DLA argues that Plaintiffs have failed to state a claim for breach of contractual duty because no contract was formed between them. DLA contends that it is not a signatory to the Promissory Note, the CLA, or the Shareholder Agreement between Vista and Antarctica. It is only signatory to the Escrow Agreement with Antarctica Legacy and Omnih Qozb, LLC. Plaintiffs respond that, either as the named escrow agent under the CLA or signatory to the Escrow Agreement, DLA owed a contractual duty to Plaintiffs. The Court concludes that DLA had no contractual duty because no contract existed between it and any plaintiff.

A plaintiff asserting a claim for breach of contract under New York law must satisfy the following elements: "(i) the formation of a contract between the parties; (ii) performance by the plaintiff; (iii) failure of defendant to perform; and (iv) damages." *Orlander v. Staples, Inc.*, 802 F.3d 289, 294 (2d Cir. 2015) (internal citation and quotation marks omitted). Under New York law, "[t]o establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." 22 N.Y. Jur. 2d, Contracts § 9 (collecting cases). "That meeting of the minds must include agreement on all essential terms." *Id.* § 31 (collecting cases).

Here, there is no dispute that there is no formal written contract between DLA and

Plaintiffs, and the SAC is devoid of allegations that plead that an enforceable agreement

otherwise existed. For instance, the SAC lacks allegations that there were any informal writings

or verbal agreements that would demonstrate a meeting of the minds between Plaintiffs and

DLA. Plaintiffs seem to suggest that DLA being named as escrow agent in and having drafted

the CLA on behalf of Antarctica is sufficient to form a contract with Plaintiffs.[3] Such allegations

do not come close to suggesting a meeting of the minds between DLA and Plaintiffs.

Plaintiffs also concede that DLA had no direct contact of any kind with Plaintiffs until

February 18, 2020, as alleged in the SAC,[4] which is several months after the September 30, 2019

Transaction and the release of the Collateral to Antarctica in November 2019. It is black letter

law that failure to plead mutual intent to be bound is fatal to any contract claim. *See Kling Real*

*Estate v. DePalma*, 306 A.D.2d 445, 762 N.Y.S.2d 256; *Harper v. Rodriguez*, 272 A.D.2d 372,

707 N.Y.S.2d 362; *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 109,

436 N.Y.S.2d 247, 417 N.E.2d 541. DLA had no contractual duty to Plaintiffs. This portion of

Count III is dismissed.

### 2. Fiduciary Duty

Under New York law, the elements of a claim for breach of fiduciary duty are "the

existence of a fiduciary duty; [ii] a knowing breach of that duty; and [iii] damages resulting

therefrom." *Johnson v. Nextel Commc'ns, Inc.*, 660 F.3d 131, 138 (2d Cir. 2011); *see also*

---

[3] Plaintiffs cite to cases that are inapposite. None of them support the proposition that Party A has a contractual duty to Party B where there exists no contract between them.
[4] DLA's Mem. at 8 ("Indeed, the SAC is entirely devoid of any allegation that DLA had any direct contact with any Plaintiff about *anything* until February 18, 2020, long after the transaction had collapsed and the Collateral had been released. (SAC § 59)) (emphasis original).

*MLSMK Inv. Co. v. JPMorgan Chase & Co.*, 431 Fed.Appx. 17, 19 (2d Cir. 2011) (summary order).

### a. *The Existence of a Fiduciary Duty*

DLA contends that the SAC does not plead a fiduciary relationship with any plaintiff arising from contract or otherwise. Plaintiffs argue that DLA had a fiduciary relationship, even though a non-signatory to the Escrow Agreement, because it was trustee of the Collateral. This Court agrees. Given this early pleading stage, the SAC contains minimally sufficient factual matter to plead that DLA owed fiduciary duties to at least Vista PC.

In New York, "[i]t is settled law that an escrow agent owes his or her beneficiary a fiduciary duty. *Talansky v. Schulman*, 2 A.D.3d 355, 359, 770 N.Y.S.2d 48, 53 (2003) (citations omitted). Liability of an escrow agent for breach of fiduciary duty attaches when "the alleged escrow agent agreed to accept that responsibility." *Friedman v. Stern*, No. 91-CV-0985(LJF), 1992 WL 58878, at *2 (S.D.N.Y. March 13, 1992). It is not required that a fiduciary relationship be "formalized in writing" as the inquiry is "necessarily fact specific to the particular case." *Webster v. Total Identity Corp.*, 22 Misc. 3d 1120(A), 880 N.Y.S.2d 876 (Sup. Ct. 2007), *aff'd,* 59 A.D.3d 967, 872 N.Y.S.2d 322 (2009) (collecting cases). "[T]he duties of the escrow agent are limited." *Liu Yao-Yi v. Wilmington Tr. Co.*, 301 F. Supp. 3d 403, 428 (W.D.N.Y. Sept. 27, 2017). "Under New York law, an escrow agreement creates a fiduciary relationship between the escrow agent and the parties to the escrow transaction." *Ray Legal Consulting Grp. v. DiJoseph*, 37 F.Supp.3d 704, 728 (S.D.N.Y. Aug. 8, 2014) (citing cases). "An escrow agreement is a contract like any other." *Liu Yao-Yi v. Wilmington Tr. Co.*, 301 F. Supp. 3d 403, 428 (W.D.N.Y. Sept. 17, 2017) (quoting *H & H Acquisition Corp. v. Fin. Intranet Holdings*, 669 F.Supp.2d 351, 363 (S.D.N.Y. 2009)). "Given this, it necessarily follows that

parties to an escrow agreement cannot impose upon [the escrow agent] any obligations in addition to its limited duties under the express terms of its contract." *Id.*

Here, only DLA, Omnih Qozb, and Antarctica Legacy are parties to the Escrow Agreement, and DLA complied with its express terms as escrow agent. The Escrow Agreement provides that DLA "shall hold the Escrowed Assets" until certain conditions are met, including, *inter alia*, "[i]n the event [that] Antarctica does not fund the remaining $2,000,000 of the Cell Funding for the Reinsurance Transaction by October 21, 2019." Escrow Agreement, Section 3. DLA did just that. Plaintiffs allege on numerous occasions that Antarctica Legacy failed to pay the $2,000,000 in cash owed under the Shareholders Agreement to Vista PC and that DLA, on the direction of Antarctica Capital, returned the Collateral on November 30, 2019. SAC ¶ 47, 60-61. An escrowee owes "a duty not to deliver the escrow to [anyone] except upon strict compliance with the conditions imposed" by the escrow agreement. *Great Am. Ins. Co. v. Canandaigua Nat'l Bank & Trust Co.*, 23 A.D.3d 1025, 1027-28, 804 N.Y.S.2d 177 (4th Dep't 2005). There can be no breach of fiduciary duty when the escrowee performs its obligations under the escrow agreement. *See Carruthers*, 450 F.Supp.2d at 317-18). Even assuming arguendo that Vista PC is a beneficiary under the Escrow Agreement upon DLA accepting and holding the Collateral, "the duties of the escrow agent are limited by the agreement and do not run to all potential incidental [beneficiaries]." *Liu Yao-Yi v. Wilmington Tr. Co.*, 301 F.Supp.3d 403, 429 (W.D.N.Y. Sept. 27, 2017) (citing cases). No fiduciary duty to Plaintiffs runs from the Escrow Agreement.

Ultimately, irrespective of formal titles attributed to the parties involved, the existence and scope of a fiduciary relationship "depends on the factual nature of the relationship [between them]." *Salomon Bros., Inc. v. Huitong Int'l Tr. & Inv. Corp.*, No. 94-CV-8559 (LAP), 1996

U.S. Dist. LEXIS 17358, 1996 WL 675795, at *2 (S.D.N.Y. Nov. 21, 1996). This is "a factual determination" that is typically "not susceptible to determination on a motion to dismiss." *Id.* New York deploys a "flexible" definition, defining a fiduciary relationship as "one founded upon trust or confidence reposed by one person in the integrity and fidelity of another." *Am. Tissue*, 351 F.Supp.2d at 102 (quoting *Penato v. George*, 52 A.D.2d 939, 383 N.Y.S.2d 900, 904-05 (N.Y. App. Div. 2d Dep't 1976)). "Such a relationship might be found to exist, in appropriate circumstances, between close friends . . . or even where confidence is based upon prior business dealings." *Holmes v. Lorch*, 329 F. Supp. 2d 516, 526 (S.D.N.Y. 2004) (quoting *Penato*, 383 N.Y.S.2d at 904-05).

However, applying the more "flexible" definition of fiduciary duty in accordance with New York law, the SAC sufficiently alleges, albeit minimally, that DLA owed a fiduciary duty, based upon trust or confidence, at least to Vista PC. The SAC alleges that DLA drafted the CLA and the Promissory Note on behalf of Antarctica, demonstrating that it knew and understood its obligations in becoming escrow agent and accepting and holding the Collateral (SAC ¶ 32), and that the CLA clearly states that Antarctica intended to secure the Promissory Note with the Collateral for the protection of Vista PC (SAC, Ex. F) in meeting its obligations under the Reinsurance Transaction. Based on these allegations, at least Vista PC, as "Beneficiary" of the CLA, had a reasonable expectation of trust and confidence in DLA considering its activities as former counsel of Antarctica and named escrow agent for the Collateral.

b. *Knowing Breach of Fiduciary Duty*

DLA contends that there can be no breach here because an escrow agent only has fiduciary duties stemming from its role as holder of the escrow assets and only to the parties to the escrow agreement. Plaintiffs respond that the release of the Collateral to Antarctica and the

subsequent failure to deliver the Collateral, upon demand, to Vista PC, as "Beneficiary" under the CLA, constitutes breach. The Court concludes that the SAC sufficiently alleges fiduciary breach at this early pleading stage.

The allegations are sufficient to plead fiduciary breach under New York Law. *Takayama* involved an escrow agreement that was silent as to the duties of the escrow holder in the event of a dispute between the purchaser and seller in a real estate transaction. *Takayama v. Schaefer*, 240 A.D.2d 21, 669 N.Y.S.2d 656 (1998). The real estate contract provided that the seller's attorney would hold the down payment of $12,000 in escrow until the closing of title. After a dispute arose between the purchaser and seller before closing, the purchaser demanded the immediate return of the down payment (which the escrow agent did not release), purchaser sued the seller and, ultimately, judgment was entered against the seller and the escrow agent for $12,000 plus interests and costs. On appeal, the *Takayama* court held that the escrow agent was not liable to pay the additional interests and costs for not releasing the funds to his client or his adversary because the condition precedent for releasing the funds—the closing of title—had not been met. The case emphasized the principle that an escrow agent has a fiduciary duty to "anyone with a beneficial interest in the trust," which in *Takayama* included both the client *and* its adversary. *Id.*

In *Director Door Corp.*, defendant law firm, designated escrow agent, stipulated to an agreement with opposing counsel that it would accept and hold the full amount of a default judgment entered against its client pending reconsideration and appellate review of the default judgment. *See Dir. Door Corp. v. Marchese & Sallah, P.C.*, 127 A.D.2d 735, 511 N.Y.S.2d 930 (1987). After the courts declined to vacate the judgment, plaintiff's attorney demanded the funds from the law firm. Though the law firm notified plaintiff's attorney that a check had been received from its client, it failed to disclose that it knew that there were insufficient funds in its

client's accounts to cover the check amount. The court held that defendant had a fiduciary duty

to disclose that information to the plaintiff. The court summarized its reasoning as follows:

"When it came to the defendant's attention as a depository of the escrow check that the plaintiff

was being defrauded by [the client], its fiduciary relationship imposed upon it a duty to disclose

the fraud to the plaintiff." *Dir. Door Corp.*, 127 A.D.2d at 737, 511 N.Y.S.2d 930.

Here, the SAC alleges that DLA knew, but failed to disclose to Vista PC, that the

Antarctica Defendants had a secret escrow agreement, of which Vista PC was not a party, that

expressly relieved DLA of any fiduciary duties and contained terms intended to deprive Vista PC

of its rights, benefits or remedies as "Beneficiary" under the CLA. SAC ¶ 64, Ex. Escrow

Agreement. It also pleads that Vista PC relied on DLA as the named escrow agent in the CLA to

properly safeguard the Collateral. SAC ¶ 36. Drawing all reasonable inferences in Plaintiffs'

favor, the SAC adequately pleads a claim for breach of fiduciary duty against DLA. *Wilmington*

*Tr. Co.*, 301 F.Supp.3d at 430 (quoting *Meisel v. Grunberg*, 651 F.Supp.2d 98, 116 (S.D.N.Y.

2009))

### 3. Fraud / Fraudulent Concealment

The SAC describes two alternative theories of fraud allegedly undertaken by DLA to

defraud Vista PC. First, DLA made intentional misrepresentations to Vista PC by naming itself

as escrow agent under the CLA in contravention of its obligations to Vista PC. Second, DLA

concealed the existence and terms of the Escrow Agreement from Vista PC—who was defined as

"Beneficiary" under the CLA that DLA drafted on behalf of Antarctica. Neither theory of

common law fraud can survive dismissal because Plaintiffs fail to plead actionable

misrepresentations or omissions under Rule 9(b).

"Under New York law, to state a claim for fraud, a plaintiff must demonstrate (1) a misrepresentation or omission of material fact; (2) which the defendant knew to be false; (3) which the defendant made with the intention of inducing reliance; (4) upon which the plaintiff reasonably relied; and (5) which caused injury to the plaintiff." *Bolivar v. FIT Int'l Grp. Corp.*, No. 12 Civ. 781, 2017 WL 11473766 (S.D.N.Y. Mar. 16, 2017), *report and recommendation adopted*, No. 12 Civ. 81, 2019 WL 4565067 (S.D.N.Y. Sept. 20, 2019) (quoting *Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001)). "Alternatively, instead of an affirmative misrepresentation, a fraud cause of action may be predicated on acts of concealment where the defendant had a duty to disclose material information." *Kaufman v. Cohen*, 307 A.D.2d 113, 119-20 (2003) (citing *Swersky v. Dreyer and Traub*, 219 A.D.2d 321, 326, *appeal withdrawn*, 89 N.Y.2d 983).

a. *Misrepresentations*

DLA argues that the SAC contains no statements that would support a claim for fraud. Plaintiffs contest this argument, asserting that DLA intentionally misrepresented its obligations to Vista PC under the Escrow Agreement by holding itself out as escrow agent under the CLA. The Court concludes that Plaintiffs cannot sustain a fraud claim because the SAC fails to allege any actionable misrepresentations. Courts consider whether statements "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Lerner*, 459 F.3d at 290 (citation and internal quotation marks omitted). A complaint must "specify the time, place, speaker, and content of the alleged misrepresentations" and "should explain how the misrepresentations were fraudulent." *Caputo v. Pfizer, Inc.*, 267 F.3d 181, 191 (2d Cir. 2001).

Here, Plaintiffs have not alleged statements that would satisfy the heightened standard for particularity under Rule 9(b). *First*, the SAC makes vague, conclusory assertions that DLA held itself out to Vista PC as escrow agent on false pretenses. SAC ¶ 76, 80. Such "conclusory and unsupported . . . assertions of fact" are insufficient to meet Rule 9(b). *Second*, as discussed *supra*, Vista PC was not a party to the Escrow Agreement, and DLA otherwise had no contractual obligation to Vista PC. Accordingly, DLA cannot identify any fraudulent statements made in the CLA based on any contractual obligation to Vista PC because one did not exist. *Third*, even though DLA allegedly drafted and is named as escrow agent in the CLA, it is not plausible that it is the speaker of any statement because DLA drafted the agreement *on behalf of others*, including its former client Antarctica, and was not party to that agreement. In addition, the statements in the CLA that DLA was the escrow agent and would accept and hold the Collateral are not untrue. It is well-settled that a plaintiff pleading fraud must sufficiently "explain why the statements were fraudulent." *Lerner*, 459 F.3d at 290 (citation and internal quotation marks omitted). DLA was escrow agent, accepted the Collateral, and held the Collateral until the express conditions for release of the Collateral in the Escrow Agreement were satisfied. *Finally*, Plaintiffs do not otherwise allege that they communicated with DLA at any point prior to February 18, 2020, which, as stated *supra*, Plaintiffs have conceded.

b. *Omissions*

Plaintiffs attempt to allege a single fraudulent omission of material fact: that DLA failed to disclose the existence and contents of the Escrow Agreement to Vista PC while DLA "knew that [Antarctica] intended to avoid their commitments to pay the $2 million cash capital commitment to Vista PC" and thus DLA "committed . . . fraudulent concealment in preparing the

Escrow Agreement and failing to disclose this secret intention to Vista PC." SAC ¶ 84. Such omission is both vague and conclusory. It cannot survive dismissal.

Plaintiffs assert that DLA committed fraudulent concealment by preparing the CLA and the Escrow Agreement while failing to disclose Antarctica's secret exit plan. Pl.'s Opp. at 17. But, as pleaded, the preparation and drafting of an agreement by counsel does not constitute an omission in this context. When "premised on an omission, a plaintiff must specify the person responsible for the failure to speak, the context of the omission, and the manner in which the omission misled the plaintiff." *Amusement Indus., Inc. v. Stern*, 786 F.Supp.2d 758, 775 (S.D.N.Y. 2011) (citation omitted). The SAC presents conclusory allegations that, at some unspecified time, at some unspecified location, in some unspecified manner, DLA failed to disclose the Escrow Agreement or its terms to Vista PC and that somehow demonstrates the present or future state of mind of Antarctica. Moreover, as stated earlier in this decision, Plaintiffs do not allege that they communicated with DLA at any point prior to February 18, 2020. It is therefore implausible that they misled Vista PC because they had no past business dealings, conversations (oral or written), negotiations, or the like during which DLA would have had an opportunity to omit information about the Escrow Agreement from their communications. For failure to plead with particularity, Plaintiffs' allegations are insufficient to state a claim for fraudulent concealment against DLA. *Lerner*, 459 F.3d at 290 (citation and internal quotation marks omitted).

Because Plaintiffs fail to allege actionable misrepresentations or omissions, the Court need not reach DLA's other arguments regarding the plausibility of the fraud claims. The fraud claims are dismissed.

### 4. Negligent Misrepresentation

To state a claim for negligent misrepresentation, a plaintiff must show that: "the defendant had a duty, as a result of a special relationship, to give correct information; (2) the defendant made a false representation that he or she should have known was incorrect; (3) the information supplied in the representation was known by the defendant to be desired by the plaintiff for a serious purpose; (4) the plaintiff intended to rely and act upon it; and (5) the plaintiff reasonably relied on it to his or her detriment". *Eaves v. Designs for Fin., Inc.*, 785 F. Supp. 2d 229, 254 (S.D.N.Y. 2011) (quoting *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 20 (2d Cir. 2000)). Additionally, "[a] plaintiff alleging negligent misrepresentation must establish reliance upon a false statement or material misrepresentation or omission, and the learned intermediary rule eliminates the possibility of any such reliance." *Amos v. Biogen Idec Inc.*, 249 F. Supp. 3d 690, 697 (W.D.N.Y. 2017) (internal citations and quotation marks omitted). Because the SAC fails to plead misrepresentation or omissions for purposes of the fraud claims, it follows that it also cannot identify a false representation sufficient to state a negligent misrepresentation claim. This claim is therefore dismissed.

### 5. Leave to Amend

Plaintiffs request leave to amend. Though Plaintiffs have amended the original complaint twice already, the Court will grant <u>limited</u> leave to amend to cure some of the deficiencies identified in this Opinion and Order. Under Rule 15(a)(2), courts "should freely give leave when justice so requires." Accordingly, Plaintiffs are granted limited leave to replead their claims for fraud / fraudulent concealment and negligent misrepresentation. The claim for breach of contract, however, is dismissed with prejudice.

### B. Claims against the Antarctica Defendants

### 1. Forum Selection Clauses

The Supreme Court has made clear that "a valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for Western Dist. of Tex.*, 571 U.S. 49, 62, 134 S.Ct. 568, 187 L.Ed.2d 487 (2013). The Second Circuit has instructed courts to afford substantial deference to parties' selected forum, especially where a forum selection clause was "made in an arm's-length negotiation by experienced and sophisticated businessmen." *New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG*, 121 F.3d 24, 29 (2d Cir. 1997) (quoting *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

Count II alleges that Antarctica Legacy breached the terms of the Shareholder Agreement by failing to make a $2 million cash payment in consideration for its acquisition of Vista PC shares. SAC ¶ 73. Both the Antarctica Defendants and Plaintiffs agree that this claim may not be heard in this Court because it is governed by the mandatory forum selection clause in the Shareholders Agreement,[5] which stipulates that exclusive jurisdiction for any claim or action relating to the agreement shall lie in state or federal court within Chittenden County in the State of Vermont. SAC ¶ 28; SAC, Ex. D at 11. The clause states:

> 10.3. <u>Governing Law</u>. This agreement shall be governed by and construed in accordance with the laws of the State of Vermont and each party hereto consents to the jurisdiction of, and venue in, federal and state courts located within Chittenden County in the State of Vermont, in any action brought by another party hereto, and agrees that no claims or actions relating to any matter hereunder will be brought by them in any other courts of any other State or any other country.

---

[5] Because the parties do not dispute that the forum selection clause is valid, binding, and enforceable as to Count II, the Court need not apply the four-part test for determining whether forum selection clauses, under federal law, are presumptively enforceable. *S.K.I. Beer Corp. v. Baltika Brewery*, 612 F.3d 705, 708 (2d Cir. 2010).

Although there is no dispute here that Plaintiffs' breach of contract claim (Count II) is governed by the forum selection clause, the Court must now determine whether any other claims against the Antarctica Defendants are covered under the forum selection clause.[6] Additionally, in *TradeComet.com*, the Second Circuit reaffirmed its earlier precedent, holding "that a district court is not required to enforce a forum selection clause only by transferring a case pursuant to § 1404(a) when that clause specifies that suit may be brought in an alternative federal forum." *TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 478 (2d Cir. 2011). The Court is not in a position to determine (1) whether the forum selection clause covers all claims in this action against the Antarctica Defendants, and, if the clause is enforceable as to those claims, (2) whether to sever and transfer those claims to the District of Vermont or dismiss the claims without prejudice to refiling in state or federal court in Vermont. Accordingly, at this time the Court will dismiss Antarctica Defendants' motion to dismiss without prejudice to refiling a renewed motion, if they so wish. The Antarctica Defendants and Plaintiffs shall file a joint status report with the Court within 14 days of the date this Opinion and Order is issued indicating their positions on the scope of the forum selection clause in the Shareholders Agreement and proposing how they would like to proceed in this case.

## V. CONCLUSION

For the foregoing reasons, DLA Piper's motion to dismiss is **DENIED IN PART** and **GRANTED IN PART**. The claims for breach of contract, common law fraud, and negligent

---

[6] The forum selection clause may be enforced against Antarctica Capital even as a non-signatory. "[A] non-signatory to a contract containing a forum selection clause may enforce the forum selection clause against a signatory when the non-signatory is 'closely related' to another signatory. In such instances, the relationship between the non-signatory and that (latter) signatory must be sufficiently close that the non-signatory's enforcement of the forum selection clause is 'foreseeable' to the signatory against whom the non-signatory wishes to enforce the forum selection clause." *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 723 (2d Cir. 2013). Antarctica Legacy is a signatory and, its affiliate, non-signatory Antarctica Capital appear to be closely related based upon the allegations in the SAC.

representation against DLA are dismissed. The Antarctica Defendants' motion to dismiss is **DENIED** without prejudice. Plaintiffs are granted limited leave to replead the fraud / fraudulent concealment and negligent misrepresentation claims against DLA. If they do so, they shall contemporaneously file a copy of a comparison between the Second Amended Complaint and Third Amended Complaint so that the Court and all parties are aware of the amendments. No later than 14 days from the date this Opinion and Order is issued, the parties shall file a joint status report indicating, at a minimum, (1) how the Antarctica Defendants and Plaintiffs would like to proceed on the exclusive venue provision and, (2) their positions on the scope of the venue provision, and (3) if Plaintiffs desire to amend the Second Amended Complaint, a proposed deadline for Plaintiffs to file the amended complaint. The Clerk of Court is instructed to terminate the motions at ECF Nos. 34 and 37.

**SO ORDERED.**

Dated: March 31, 2022

New York, New York

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**

21